# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| TIMOTHY A. ST. CYR and PAMELA UGLEM, individually on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>HUTCHINSON TECHNOLOGY INC., HEADWAY TECHNOLOGIES, INC., MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO. LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., NHK SPRING PRECISION (GUANGZHOU) CO., LTD., SAE MAGNETICS (H.K.) LTD., and TDK CORPORATION,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiffs Timothy A. St. Cyr and Pamela Uglem (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Defendants Hutchinson Technology Inc., Headway Technologies, Inc., Magnecomp Precision Technology Public Co. Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (H.K.) Co., Ltd., NHK Spring Co. Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NHK Spring Precision (Guangzhou) Co., Ltd., SAE

1

Magnetics (H.K.) Ltd., and TDK Corporation for injunctive relief, damages, and other relief under federal antitrust laws, state antitrust and consumer protection statutes, and the law of unjust enrichment.

## NATURE OF THE ACTION

1.      This action arises out of Defendants' anticompetitive conduct and global conspiracy to fix prices and allocate market shares in the market for hard disk drive suspension assemblies. Hard disk drives or HDDs containing suspension assemblies are incorporated into many computers and other electronic devices requiring electronic storage. HDDs are sold either as standalone products such as external hard drives or integrated in various products that require digital storage such as desktop and laptop computers, or gaming consoles.

2.      An HDD suspension assembly is a component that is incorporated into internal and external HDDs, which store information electronically using magnetism. HDDs use magnetic recording heads to read from and write onto rapidly spinning disks. The HDD suspension assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the HDD's circuitry.

3.      As reported by Department of Justice ("DOJ") Assistant Attorney General Makan Delrahim, HDD suspension assemblies "are critical to the operation and

performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."[1]

4.    Defendants manufactured HDD suspension assemblies and sold them in, or for delivery to, the United States.

5.    During the period of May 2008 until such time as the Defendants' unlawful conduct ceased (the "Class Period"), Defendants and their co-conspirators contracted, combined, and conspired to fix, raise, maintain, and/or stabilize the prices of and allocate market shares for HDD suspension assemblies in the United States.[2]

6.    Defendants and their co-conspirators have participated in a combination and conspiracy to suppress and eliminate competition in the market for HDD suspension assemblies by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of HDD suspension assemblies sold in the United States and elsewhere. The combination and conspiracy that Defendants and their co-conspirators were engaged in was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, state antitrust and consumer protection statutes, and the common law of unjust enrichment.

7.    As a direct and proximate result of the anticompetitive and unlawful conduct alleged herein, prices for HDD suspension assemblies were maintained and

---

[1] Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives, DOJ (Jul. 29, 2019), https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-suspension-assemblies-used-hard-disk.

[2] Information, *United States of America v. NHK Spring Co., Ltd.*, 2:19-cr-20503 (E.D. Mich. Jul. 29, 2019), ECF No. 1 ("NHK Information").

stabilized at artificially inflated levels, eliminating and excluding competition, extending or maintaining Defendants' market power, and fortifying barriers to entry in the HDD suspension assemblies market.

## JURISDICTION AND VENUE

8.      Plaintiffs bring this lawsuit pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, for equitable and injunctive relief against Defendants for violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Plaintiffs also bring claims for actual and exemplary damages under state antitrust and consumer protection statutes and the common law of unjust enrichment.

9.      This Court has jurisdiction over the federal antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, as this is a class action in which the matter or amount in controversy exceeds $5,000,000 exclusive of interests and costs, there are more than 100 members in each of the Classes, and some of the members of the proposed Classes are citizens of a state different from some Defendants.

10.      Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391(b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, has and had agents in, and are found to transact business in this District.

## THE PARTIES

### I.    PLAINTIFFS

11.    Plaintiff Timothy A. St. Cyr is a resident of McGregor, Minnesota. During the Class Period, Mr. St. Cyr purchased at least one HDD suspension assembly indirectly from at least one Defendant, and was injured in his business or property as a result of one or more Defendant's unlawful conduct described herein.

12.    Plaintiff Pamela Uglem is a resident of Champlin, Minnesota. During the Class Period, Ms. Uglem purchased at least one HDD suspension assembly indirectly from at least one Defendant, and was injured in her business or property as a result of one or more Defendant's unlawful conduct described herein.

### II.    DEFENDANTS

#### TDK Defendants

13.    Defendant TDK Corporation ("TDK") is a Japanese corporation with its principal place of business in Tokyo, Japan. TDK, directly and/or through its wholly owned and/or controlled affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

14.    Defendant Magnecomp Precision Technology Public Co. Ltd. ("MPT") is a wholly owned subsidiary of TDK with its principal place of business in Ayutthaya, Thailand. Defendant MPT, directly and/or through its affiliates, manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

15.    Defendant SAE Magnetics (H.K.) Ltd. ("SAE") is a Chinese corporation with its principal place of business in Hong Kong, China. Defendant SAE, directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

16.    Defendant Hutchinson Technology Inc. ("HTI") is a Minnesota corporation with its principal place of business in Hutchinson, Minnesota. TDK acquired HTI on October 6, 2016. Defendant HTI is an affiliate of and is wholly controlled by TDK. Defendant HTI directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

17.    Defendant Headway Technologies, Inc. ("Headway") is a Delaware corporation with its principal place of business in Milpitas, California. It is an affiliate of and is wholly controlled by TDK Corporation. Defendant Headway directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

18.    TDK and its related entities are collectively referred to as "TDK" or "TDK Corp."

**NHK Defendants**

19.    Defendant NHK Spring Co., Ltd. ("NHK") is a Japanese corporation with its principal place of business in Yokohama, Japan. Defendant NHK directly and/or

through its wholly owned and/or controlled affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

20.    Defendant NHK International Corporation is a Michigan corporation with its principal place of business in Novi, Michigan. It is an affiliate of and is wholly controlled by NHK. Defendant NHK International Corporation directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

21.    Defendant NHK Spring (Thailand) Co., Ltd. is a Thai corporation with its principal place of business in Samutprakarn, Thailand. It is an affiliate of and is wholly controlled by NHK Spring Co., Ltd.  Defendant NHK Spring (Thailand) Co., Ltd. directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

22.    Defendant NHK Spring Precision (Guangzhou) Co., Ltd. is a Chinese corporation with its principal place of business in Guangzhou, China. It is an affiliate of and is wholly owned and/or controlled by NHK Spring Co., Ltd. Defendant NHK Spring Precision (Guangzhou) Co., Ltd. directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

23.    Defendant NAT Peripheral (Dong Guan) Co., Ltd. is a Chinese corporation with its principal place of business in Guangdong, China. It is an affiliate of and is wholly owned and/or controlled by NHK Spring Co., Ltd. Defendant NAT Peripheral (Dong Guan) Co., Ltd. directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

24.    Defendant NAT Peripheral (H.K.) Co., Ltd. is a Chinese corporation with its principal place of business in Hong Kong, China. It is an affiliate of and is wholly controlled by NHK Spring Co., Ltd. Defendant NAT Peripheral (H.K.) Co., Ltd. directly and/or through its affiliates, manufactured, marketed, and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

25.    NHK and its related entities are collectively referred to herein as "NHK" or "NHK Spring."

### Unnamed Co-Conspirators and Agents

26.    On information and belief, other corporations, partnerships, or business entities, currently unknown to the Plaintiffs, are co-conspirators with Defendants in that they have willfully performed acts and made statements in furtherance of the unlawful restraints of trade described herein.

27.    These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to raise and maintain

prices of HDD suspension assemblies. Plaintiffs reserve the right to name some or all of these entities as Defendants at a later date.

**FACTUAL ALLEGATIONS**

I.     **PRODUCT INFORMATION**

28.     Hard disk drives store and retrieve information by using magnetic heads to write onto and read from rapidly spinning disks.[3] A magnetic head is attached to a slider, and the slider is held by a suspension assembly. The assembly of a suspension and a slider forms a head gimbal assembly (HGA), and the assembly of an HGA (one or several) and an actuator arm constitutes a head stack assembly (HSA).[4]

29.     Defendants manufacture and sell HDD suspension assemblies in the United States and elsewhere to companies that install HDD suspension assemblies into HDDs. Consumers may purchase HDDs as stand-alone products or as part of a computer or other device.

30.     HDDs have been essential components in a wide range of computer products for decades.  They have been used as the primary digital storage device in the majority of desktop computers, laptop computers, video-game consoles, and other electronic devices.  It is estimated that during the Class Period roughly 4.5 billion HDDs

---

[3] *Suspension Assembly for Hard Disk Drive*, Encyclopedia of Tribology, https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140#Fig19482 (last visited Aug 1, 2019).
[4] *Id.*

were manufactured globally.[5] Every single device with an HDD contained at least one suspension assembly.

## II.    GOVERNMENT INVESTIGATIONS

31.    The DOJ has been investigating the HDD suspension assembly market since at least 2016. In July 2016, Defendant HTI received a letter from the DOJ requesting documents related to the investigation.

32.    This investigation became public on July 29, 2019, when the DOJ announced that Defendant NHK Spring Co., Ltd. had agreed to plead guilty for its role in a global price-fixing conspiracy and pay a $28.5 million criminal antitrust fine. The DOJ's criminal Information stated that Defendant NHK Spring Co., Ltd. engaged in a continuing agreement, understanding, and concert of action with its co-conspirators to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for HDD suspension assemblies to be sold in the United States and elsewhere from at least May 2008 through at least April 2016.[6]

33.    According to the DOJ Information, Defendant NHK Spring Co., Ltd. and its co-conspirators carried out the conspiracy by, among other things:

> a.    Engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the

---

[5] Arne Holst, *Worldwide Unit Shipments of Hard Disk Drives (HDD) from 1976 to 2022 (in Millions)*, STATISTA (Feb. 22, 2019), https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/.
[6] NHK Information.

prices of, and allocate their respective market shares for HDD suspension assemblies;

b.  Exchanging HDD suspension assemblies pricing information, including anticipated pricing quotes;

c.  Relying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign customers;

d.  Selling HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

e.  Accepting payment for HDD suspension assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices.

34.  In July 2016, the Japan Fair Trade Commission ("JFTC") searched the offices of TDK Corporation and NHK Spring Co. Ltd. on suspicion that they formed a price cartel for HDD suspension assemblies in violation of Japan's Anti-Monopoly Act.[7] On February 9, 2018, the JFTC issued a cease and desist order and fined TDK and NHK a total of ¥1.08 billion.[8]

35.  On April 26, 2018, Brazil's Administrative Council for Economic Defense ("CADE") announced that it had uncovered evidence that HTI, MTP, NHK, TDK, and

---

[7] https://www.japantimes.co.jp/news/2016/07/26/business/corporate-business/tdk-nhk-spring-searched-alleged-price-cartel/.
[8] http://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.files/180209.pdf.

SAE, and at least thirty-eight individuals connected with those companies, colluded for more than a decade to fix prices in the market for HDD suspension assemblies.[9] CADE announced that the alleged international cartel involved sharing data and divvying up customers to keep prices high on the HDD suspension assemblies. "CADE's General Superintendence initiated an administrative proceeding to investigate the practice of an international cartel," and has uncovered evidence "that the companies divided the market and fixed prices in response to [customers'] quotation requests."[10]

36.     In January 2018, it was reported that South Korea's antitrust regulator, the Korean Fair Trade Commission (KFTC), was investigating suspected collusion by manufacturers of HDD suspension assemblies.

## III.     INDUSTRY AND MARKET CHARACTERISTICS

### 1.  The HDD Suspension Assemblies Market is Highly Concentrated

37.     Upon information and belief, the industry for HDD suspension assembly manufacturers is highly consolidated, such that at present Defendants TDK Corp. and NHK Spring are the two major suppliers of HDD suspension assemblies.

38.     Over the years, the HDD suspension assemblies market has been dominated by only a handful of large manufacturers. This industry has experienced numerous consolidations making the number of market participants even smaller. In 2005, Magnecomp and KR Precision merged to become Magnecomp Precision Technology

---

[9] CADE's General Superintendence Probes Cartel in the Global Market for Hard Disk Components, CADE (Apr. 26, 2018), http://en.cade.gov.br/cades-general-superintendence-probes-cartel-in-the-global-market-for-hard-disk-components-1.
[10] *Id.*

("MPT").[11] TDK acquired SAE in 1986[12] and then became a majority stakeholder in MPT in 2007.[13]

39.     HTI, which was acquired by Defendant TDK Corporation in 2016, was previously one of the largest manufacturers of HDD suspension assemblies. HTI's market share is now consolidated within the TDK Corporation. According to TDK Corporation's annual report, it now controls 55%–60% of the world market share for HDD suspension assemblies.[14]

### 2.  High Barrier to Entry

40.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry facilitate the formation and maintenance of a cartel.

41.     There are substantial barriers that preclude, reduce or make more difficult entry into the HDD suspension assemblies market. A new entrant into the business would face high start-up costs to set up manufacturing plants and equipment which can handle mass production as well as skilled labor, among other things. Defendant HTI acknowledged this high barrier by stating "we believe that the number of entities that

---

[11] https://www.magnecomp.com/Home/About.

[12] http://www.sae.com.hk/about-us.

[13] https://www.reuters.com/article/idUST26493620070829.

[14] Annual Report 2017, TDK CORPORATION, http://www.global.tdk.com/ir/ir_library/annual/pdf/2017_all.pdf.

have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain small."[15]

42.     With no serious risk of new players entering the market, TDK and NHK Spring have been able to collectively raise prices without fear of losing market share.

**3.  The Demand for HDD Suspension Assemblies is Inelastic**

43.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "elastic" if an increase in the price of a product results in diminished revenues, with declines in the quantity sold of that product outweighing the effects of higher prices on the value of sales. For products with a highly elastic demand, a price increase results in a large drop in the volume of sales. In other words, customers have many feasible alternatives for cheaper products of similar quality, and so cut purchases sharply in the face of even a small price increase.

44.     For a cartel to profit from raising prices above competitive levels, market demand must be relatively less elastic at competitive prices. That is, an increase in prices should not cause a huge decline in demand. Otherwise, increased prices would result in sharply declining sales, as some customers purchased substitute products or declined to buy altogether. A less elastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and

---

[15] HTI's 2015 10k filing,
https://www.sec.gov/Archives/edgar/data/772897/000157587215000208/10k.htm.

sufficient lost sales revenues as to offset the beneficial effect of higher prices on profits for products they still continue to sell.

45.    Demand for HDD suspension assemblies is highly inelastic because there are no close substitutes for these products. HDDs were a necessary component of a wide range of computing products manufactured and sold during the Class Period, so customers seeking to purchase these computing products were forced to purchase suspension assemblies, even at supra-competitive prices.

## IV.    TRADE AND COMMERCE

46.    During the Class Period, Defendants collectively controlled the vast majority of the market for HDD suspension assemblies both globally and in the United States.

47.    During the Class Period, Defendants and their co-conspirators sold and distributed HDD suspension assemblies throughout the United States. Defendants and their co-conspirators manufactured, sold, and shipped substantial quantities of HDD suspension assemblies in a continuous and uninterrupted flow of interstate commerce to customers.

48.    Defendants' anticompetitive business activities in connection with the production and sale of HDD suspension assemblies occurred within the flow of, and substantially affected, interstate trade and commerce.

## V.    INJURY TO PLAINTIFFS AND CLASS MEMBERS

49.    As a result of Defendants' combination or conspiracy, price competition has been suppressed or eliminated in the market for HDD suspension assemblies; the

prices of HDD suspension assemblies have been fixed, maintained, or stabilized at artificially inflated and supra-competitive levels; indirect purchasers of HDD suspension assemblies have been deprived of free and open competition; and indirect purchasers of HDD suspension assemblies have paid artificially inflated or supra-competitive prices.

50.     During and throughout the Class Period, Plaintiffs and members of Classes indirectly purchased HDD suspension assemblies in the United States that were manufactured or sold by Defendants. The purpose of the conspiratorial and unlawful conduct of Defendants was to fix, raise, stabilize, and/or maintain the price of the HDD suspension assemblies.

51.     As a direct and proximate result of the alleged violations of the antitrust laws, Plaintiffs and Class members have sustained injury to their businesses or property, having paid higher prices for HDD suspension assemblies than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.

52.     It is well recognized that in a multi-level chain of distribution, such as exists here, an overcharge is felt throughout the chain of distribution. As noted, antitrust scholar Professor Herbert Hovenkamp stated in his treatise, Federal Antitrust Policy, The Law of Competition and Its Practice (1994):

> A monopoly overcharge at the top of a distribution chain generally results in higher prices at every level below.  For example, if production of aluminum is monopolized or cartelized, fabricators of aluminum cookware will pay higher prices for aluminum. In most cases they will absorb part of these increased costs themselves and pass part along to cookware wholesalers. The wholesalers will charge higher prices to the retail stores, and the stores will do it once again to retail consumers. Every person at

16

every stage in the chain likely will be poorer as a result of the monopoly price at the top.

Theoretically, one can calculate the percentage of any overcharge that a firm at one distributional level will pass on to those at the next level.

Similarly, Professor Jeffrey K. MacKie-Mason  has stated, it is "well known in economic theory and practice, [that] at least some of the overcharge will be passed on by distributors to end consumers."

53.     Consequently, while the direct purchasers were the first to pay supra-competitive prices, some or all of the overcharge was passed along the distribution chain and absorbed by Plaintiffs and Class members when they purchased HDDs containing HDD suspension assemblies.

54.     The markets for HDDs and HDD suspension assemblies are inextricably intertwined because HDD suspension assemblies do not have utility outside of their incorporation into HDDs. The prices paid by direct purchasers of HDD suspension assemblies affect the prices paid by indirect purchasers for HDDs that have incorporated HDD suspension assemblies.

55.     Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charges passed through the chain of distribution. Thus, the economic harm to Plaintiffs and the Class members can be quantified.

56.     The purpose of the conspiratorial conduct of Defendants was to raise, fix or maintain the prices of HDD suspension assemblies and, as a direct and foreseeable result,

Plaintiffs and Class members paid supra-competitive prices for HDD suspension assemblies during the Class Period.

57.    By reason of the alleged violations of the antitrust laws, Plaintiffs and Class members have sustained injury to their business or property, having paid higher prices for HDD suspension assemblies than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result have suffered damages. Plaintiffs and Class members have paid artificially inflated or supra-competitive prices for HDD suspension assemblies during the Class Period, which has unjustly enriched the Defendants.

58.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VI.    TOLLING OF THE STATUTES OF LIMITATIONS AND FRAUDULENT CONCEALMENT

### 1.    TOLLING OF THE STATUTES OF LIMITATIONS

59.    Plaintiffs and Class members had neither actual nor constructive knowledge of the facts constituting their claim for relief until the public announcement of NHK Spring's agreement to plead guilty to the Department of Justice on July 29, 2019.

60.    Moreover, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence anti-competitive pricing of these components.

61.    Plaintiffs and Class members are indirect purchasers of HDD suspension assemblies, and as such never interacted directly with Defendants in this case.  They had

no means by which they could have discovered the conspiracy described in this Complaint.

62.    For these reasons, the statutes of limitations as to Plaintiffs' and Class members' claims did not begin to run until July 29, 2019, and has been tolled with respect to the claims that Plaintiffs and Class members have alleged herein.

### 2. FRAUDULENT CONCEALMENT

63.    Additionally or alternatively, application of the doctrine of fraudulent concealment tolled the statutes of limitations on these claims. Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement of NHK Spring's agreement to plead guilty to the Department of Justice on July 29, 2019

64.    Defendants engaged in a secret conspiracy and did not reveal facts that would put the Plaintiffs or Class members on inquiry notice that there was an agreement to fix prices for HDD suspension assemblies.  By their very nature, price-fixing conspiracies are inherently self-concealing. Plaintiffs allege that Defendants agreed among themselves to conceal their unlawful conspiracy, including by agreeing not to discuss the conspiracy publicly and by other means of avoiding detection and maintaining secrecy. Accordingly, Plaintiffs could not have had either actual or constructive knowledge of the price-fixing scheme until the public announcement of NHK Spring's agreement to plead guilty on July 29, 2019.

65.     As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and Class members have alleged in this Complaint.

## CLASS ALLEGATIONS

66.     Plaintiffs bring this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rules 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> **Nationwide Class**: All persons and entities in the United States who, during the Class Period, indirectly purchased HDD suspension assemblies, not for resale, that were manufactured or sold by Defendants or Defendants' co-conspirators including the purchase of HDD suspension assemblies as stand-alone products or as components of new electronic hardware.

67.     Plaintiffs bring this action on behalf of themselves and as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, seeking damages pursuant to antitrust, unfair competition, consumer protection, and unjust enrichment laws, on behalf of the following class (the "Damages Class"):

> **Damages Class**: All persons and entities who, during the Class Period, indirectly purchased HDD suspension assemblies, not for resale, in the Indirect Purchaser States[16] that were manufactured or sold by Defendants or Defendants' co-conspirators including the purchase of HDD suspension assemblies as stand-alone products or as components of new electronic hardware.

68.     The Nationwide Class and Damages Class are referred to collectively as the "Classes" unless otherwise indicated. Further, "Class members" refers to all members of

---

[16] The "Indirect Purchaser States" are the states listed in the Second, Third, and Fourth claims for relief.

the Classes. Excluded from the Classes are the Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

69.    **Numerosity**. The members of each Class are so numerous that joinder of all members of any class would be impracticable. Plaintiffs reasonably believe that Class members number hundreds of millions of people or more in the aggregate and the Classes are ascertainable.

70.    **Commonality**. There are questions of law and fact common to the Classes, including but not limited to the following:

a.    Whether Defendants engaged in a combination or conspiracy amongst themselves to fix, raise, maintain, and/or stabilize the prices of HDD suspension assemblies in the United States and in each of the Indirect Purchaser States;

b.    The identity of additional participants of the alleged combinations and conspiracy, if any;

c.    The duration of the alleged combination or conspiracy and nature and character of the acts carried out by Defendants in furtherance of the combination or conspiracy.

d.    Whether the alleged combination or conspiracy violated Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

e.    Whether the combination or conspiracy had the effect of artificially inflating the price of HDD suspension assemblies sold in the United States during the Class Period;

f.    Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws as alleged in the Second and Third Claims for Relief;

g.    Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and members of the Damages Class, thereby entitling Plaintiffs and members of the Damages Class to disgorgement of all benefits derived by Defendants as alleged in the Fourth Claim for Relief;

h.    Whether Defendants' conduct caused injury to Class members;

i.    Whether Defendants took actions to conceal their unlawful conspiracy;

j.    The appropriate injunctive and related equitable relief for the Nationwide Class; and

k.    The appropriate measure and amount of damages to which Plaintiffs and other Damages Class members are entitled.

71.    **Typicality**. Plaintiffs' claims are typical of the claims of other Class members of the classes because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct by Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and

22

all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class members arise from the same operative facts and are based on the same legal theories.

72. **Adequacy of Representation**. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the other Class members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

73. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

74.    Further, Defendants have acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to Class members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

75.    Defendants' combination or conspiracy to eliminate competition and fix, raise, maintain, or stabilize the prices of HDD suspension assemblies in the United States has caused Plaintiffs and Class members to suffer antitrust injury in the following ways, among others:

a.    Price competition has been suppressed or eliminated in the HDD suspension assemblies market;

b.    Prices of HDD suspension assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

c.    Indirect purchasers of HDD suspension assemblies have been deprived of free and open competition; and

d.    Indirect purchasers of HDD suspension assemblies have paid artificially inflated prices for HDD suspension assemblies.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Sherman Act, Section 1, 15 U.S.C. § 1**
**(On Behalf of the Nationwide Class for Injunctive and Equitable Relief)**

76.    Plaintiffs incorporate and reallege each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

77.    Defendants are direct competitors in the HDD suspension assemblies market throughout the United States.

78.    Beginning in at least 2008, and continuing thereafter to the present, Defendants, by and through their officers, directors, employees, agents, or other representatives, have explicitly or implicitly colluded to raise prices in the HDD suspension assemblies market in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

79.    Plaintiffs and the other members of the Nationwide Class have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Nationwide Class have paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' collusive conduct. This injury is of the type the federal antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

80.    In formulating and effectuating this conspiracy, Defendants did those things that they combined and conspired to do, including:

> a.    Participating in meetings and conversations among themselves during which they agreed to charge prices at certain levels, and otherwise take actions to fix, increase, maintain, or stabilize prices of HDD suspension assemblies in the United States;
>
> b.    Agreeing to implement lock-step price increases in the presence of excess supply; and

       c.     Participating in meetings and conversations among themselves to implement, adhere, and police the agreements they reached.

81.    The combination and conspiracy alleged herein has had the following effects, among others:

       a.     Price competition in the sale of HDD suspension assemblies has been restrained, suppressed, and/or eliminated in the United States;

       b.     Prices for HDD suspension assemblies sold by Defendants and all of their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

       c.     Those who purchased HDD suspension assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

82.    HDD suspension assemblies are a commodity-like product, which makes the market more susceptible to price fixing, as products are nearly uniform with the primary competition being based upon price. This commodity-like nature of their product allows Defendants to more easily monitor and detect defections from their price-fixing agreement.

83.    Plaintiffs and the members of the Classes have been injured and will continue to be injured by paying more for HDD suspension assemblies manufactured or sold by Defendants than they would have paid and will pay in the absence of the combination and conspiracy as alleged herein.

84.    Plaintiffs and the members of the Classes are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF
**Violation of the State Antitrust Statutes**
**(On Behalf of the Plaintiffs and the Damages Class)**

85.    Plaintiffs incorporate and reallege each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

86.    During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of HDD suspension assemblies in unreasonable restraint of trade in commerce, in violation of the various state antitrust statutes set forth below.

87.    Defendants' acts and combinations in furtherance of the conspiracy have caused unreasonable restraints in the market for HDD suspension assemblies.

88.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated Indirect Purchasers in the Damages Class who purchased HDD suspension assemblies have been harmed by being forced to pay artificially-inflated, supra-competitive prices for HDD suspension assemblies.

89.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully engaged in a contract, combination, or conspiracy in restraint of trade in violation of the following state antitrust laws pleaded below.

90.    **Arizona.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Ariz. Rev. Stat. §§ 44-1402, *et seq.*** with respect to purchases of

HDD suspension assemblies in Arizona by Class members and/or purchases by Arizona residents.

a.  Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1402, *et seq.*

91.  **California.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Cal. Bus. and Prof. Code, §§ 16720, *et seq.*** with respect

to purchases of HDD suspension assemblies in California by Class members and/or purchases by California residents.

    a.    During the Class Period, Defendants entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of HDD suspension assemblies at supra-competitive levels.

    b.    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of HDD suspension assemblies.

    c.    For the purpose of forming and effectuating the unlawful trust, the Defendants have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of HDD suspension assemblies.

    d.    The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of HDD suspension assemblies has been restrained, suppressed, and/or

eliminated in the State of California; (2) prices for HDD suspension assemblies sold by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased HDD suspension assemblies directly or indirectly from Defendants have been deprived of the benefit of free and open competition.

e.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property in that they paid more for HDD suspension assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

92.  **District of Columbia.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **D.C. Code Ann. §§ 28-4502,** *et seq.* with respect to purchases of HDD suspension assemblies in the District of Columbia by Class members and/or purchases by District of Columbia residents.

a.  Defendants' combination or conspiracy had the following effects:

(1) HDD suspension assembly price competition was restrained,

30

suppressed, and eliminated throughout the District of Columbia; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4502, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4502, *et seq.*

93.    **Hawaii.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Haw. Rev. Stat. § 480-1, *et seq.*** with respect to purchases of HDD suspension assemblies in Hawaii by Class members and/or purchases by Hawaii residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Code § 480-1, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under Haw. Code § 480-1, *et seq.*

94.    **Iowa.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Iowa Code §§ 553.4 *et seq.*** with respect to purchases of HDD suspension assemblies in Iowa by Class members and/or purchases by Iowa residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained,

32

suppressed, and eliminated throughout Iowa; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.4, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.4, *et seq.*

95.    **Kansas.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Kan. Stat. Ann. §§ 50-101, *et seq.*** with respect to purchases of HDD suspension assemblies in Kansas by Class members and/or purchases by Kansas residents.

a.     Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD suspension

33

assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.　During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c.　As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.　By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

96.　**Maine.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Me. Rev. Stat. Ann. 10 §§ 1101,** *et seq.* with respect to purchases of HDD suspension assemblies in Maine by Class members and/or purchases by Maine residents.

a.　Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at

34

artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. 10, §§ 1101, *et seq.*

97.    **Michigan.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Mich. Comp. Laws Ann. §§ 445.772,** *et seq.* with respect to purchases of HDD suspension assemblies in Michigan by Class members and/or purchases by Michigan residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD suspension assembly prices were raised, fixed, maintained and

stabilized at artificially high levels throughout Michigan; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.772, *et seq.* Accordingly, members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.772, *et seq.*

98. **Minnesota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Minn. Stat. §§ 325D.51,** *et seq.* with respect to purchases of HDD suspension assemblies in Minnesota by Class members and/or purchases by Minnesota residents.

a. Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD

suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.51, *et seq.* Accordingly, members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.51, *et seq.*

99.  **Mississippi.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Miss. Code Ann. §§ 75-21-3, *et seq.*** with respect to purchases of HDD suspension assemblies in Mississippi by Class members and/or purchases by Mississippi residents.

a.  Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD

37

suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-3, *et seq.* Accordingly, members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-3, *et seq.*

100.    **Nebraska.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Neb. Rev. Stat. §§ 59-801, *et seq.*** with respect to purchases of HDD suspension assemblies in Nebraska by Class members and/or purchases by Nebraska residents.

a.     Defendants' combination or conspiracy had the following effects:

(1) HDD suspension assembly price competition was restrained,

38

suppressed, and eliminated throughout Nebraska; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§ 59-801, *et seq*. Accordingly, members of the Damages Class seek all relief available under Nebraska Rev. Stat. §§ 59-801, *et seq.*

101.    **Nevada.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Nev. Rev. Stat. Ann. §§ 598A.060,** *et seq.* with respect to purchases of HDD suspension assemblies in Nevada by Class members and/or purchases by Nevada residents.

a.    Defendants' combination or conspiracy had the following effects:

(1) HDD suspension assembly price competition was restrained,

suppressed, and eliminated throughout Nevada; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.*

102.  **New Hampshire.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.H. Rev. Stat. Ann. §§ 356:2, *et seq.*,** with respect to purchases of HDD suspension assemblies in New Hampshire by Class members and/or purchases by New Hampshire residents.

a.  Defendants' combination or conspiracy had the following effects:

(1) HDD suspension assembly price competition was restrained,

40

suppressed, and eliminated throughout New Hampshire; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.  During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Rev. Stat. Ann. §§ 356:2, *et seq*. Accordingly, members of the Damages Class seek all relief available under New Hampshire Rev. Stat. Ann. §§ 356:2, *et seq*.

103.  **New Mexico.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.M. Stat. Ann. §§ 57-1-1, *et seq*.** with respect to purchases of HDD suspension assemblies in New Mexico by Class members and/or purchases by New Mexico residents.

a.      Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

104.    **New York.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.Y. Gen. Bus. L. §§ 340, *et seq.*** with respect to

purchases of HDD suspension assemblies in New York by Class members and/or purchases by New York residents.

    a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies, or purchased products that were otherwise of lower quality than they would have been absent the conspirators illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

    b.    During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

    c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se*

violation of the Act. Accordingly, members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

105.    **North Carolina.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.C. Gen. Stat. §§ 75-1, *et seq*.** with respect to purchases of HDD suspension assemblies in North Carolina by Class members and/or purchases by North Carolina residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

c.    As a direct and proximate result of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

       d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

106.   **North Dakota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **N.D. Cent. Code §§ 51-08.1-01, *et seq*.** with respect to purchases of HDD suspension assemblies in North Dakota by Class members and/or purchases by North Dakota residents.

       a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

       b.    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

107.    **Oregon.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Or. Rev. Stat. §§ 646.705, *et seq.*,** with respect to purchases of HDD suspension assemblies in Oregon by Class members and/or purchases by Oregon residents.

a.     Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

46

    c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Rev. Stat. §§ 646.705, *et seq*. Accordingly, members of the Damages Class seek all relief available under Oregon Rev. Stat. §§ 646.705, *et seq*.

108. **Rhode Island.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **R.I. Gen. Laws §§ 6-36-4, *et seq*.** with respect to purchases of HDD suspension assemblies in Rhode Island by Class members and/or purchases by Rhode Island residents.

    a.      Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b.      During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce.

  c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

  d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of R.I. Gen. Laws §§ 6-36-4, *et seq.* Accordingly, members of the Damages Class seek all forms of relief available under R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

109. **South Dakota.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **S.D. Codified Laws Ann. §§ 37-1,** *et seq.* with respect to purchases of HDD suspension assemblies in South Dakota by Class members and/or purchases by South Dakota residents.

  a. Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

  b. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

110. **Tennessee.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Tenn. Code Ann. §§ 47-25-101, *et seq*.** with respect to purchases of HDD suspension assemblies in Tennessee by Class members and/or purchases by Tennessee residents.

a. Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

49

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

c. As a direct and proximate result of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

111. **Utah.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Utah Code Ann. §§ 76-10-3101, *et seq.*** with respect to purchases of HDD suspension assemblies in Utah by Class members and/or purchases by Utah residents.

a. Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

50

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Ann. §§ 76-10-3101, *et seq.* Accordingly, members of the Damages Class seek all relief available under Utah Code Ann. §§ 76-10-3101, *et seq.*

112.  **Vermont.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Vt. Stat. Ann. 9 §§ 2453,** *et seq.* with respect to purchases of HDD suspension assemblies in Vermont by Class members and/or purchases by Vermont residents.

a.  Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-

51

competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq.* Accordingly, members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq.*

113.    **West Virginia.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **W.Va. Code §§ 47-18-1,** *et seq.* with respect to purchases of HDD suspension assemblies in West Virginia by Class members and/or purchases by West Virginia residents.

a.     Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-

52

competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.* Accordingly, members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq.*

114.    **Wisconsin.** Defendants have entered into an unlawful agreement in restraint of trade in violation of **Wis. Stat. §§ 133.01 *et seq.*** with respect to purchases of HDD suspension assemblies in Wisconsin by Class members and/or purchases by Wisconsin residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD suspension assembly prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) members of the Damages Class were deprived of free and open

competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

## THIRD CLAIM FOR RELIEF
### Violation of State Consumer Protection Statutes
### (On Behalf of Plaintiffs and the Damages Class)

115.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

116.   Defendants engaged in unfair competition, or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

117.   **Arizona.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Ariz. Code §§**

**44-1521,** *et seq.*, with respect to purchases of HDD suspension assemblies in Arizona by Class members and/or purchases by Arizona residents.

    a.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Arizona and took efforts to conceal their agreements from members of the Damages Class.

    b.    The aforementioned conduct on the part of the Defendants constituted deceptive or unfair acts or practices in violation of Ariz. Code §§ 44-1522(A).

    c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    d.    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce and consumers.

e.   As a direct and proximate result of the unlawful conduct of Defendants, members of the Damages Class have been injured in their business and property and are threatened with further injury.

f.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Code § 44-1521, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

118.   **Arkansas.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Ark. Code Ann. §§ 4-88-101, *et seq.*,** with respect to purchases of HDD suspension assemblies in Arkansas by Class members and/or purchases by Arkansas residents.

a.   Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from members of the Damages Class.

b.   The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Ann., § 4-88-107(a)(10).

c.   Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed,

and eliminated throughout Arkansas; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.      During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

e.      As a direct and proximate result of the unlawful conduct of Defendants, members of the Damages Class have been injured in their business and property and are threatened with further injury.

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Ann., § 4-88-107(a)(10) and, accordingly, members of the Damages Class seek all relief available under that statute.

119.    **California.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Cal. Bus. & Prof. Code §§ 17200,** *et seq*, with respect to purchases of HDD suspension assemblies in California by Class members and/or purchases by California residents.

a.      During the Class Period, Defendants marketed, sold, or distributed HDD suspension assemblies in California, and committed and continue to commit acts of unfair competition, as defined by

57

Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

b.  This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

c.  Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above.

d.  Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, are otherwise unfair, unconscionable, unlawful or fraudulent, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts.

58

e.     Defendants' acts or practices are unfair to consumers of HDD suspension assemblies in the State of California within the meaning of Section 17200, California Business and Professions Code.

f.     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

g.     Members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

h.     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

i.     The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause the members of the Damages Class to pay supra-competitive and artificially-inflated prices for HDD suspension assemblies. Members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

j.     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

      k.     As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

120.   **District of Columbia.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **D.C. Code §§ 28-3901,** *et seq.* with respect to purchases of HDD suspension assemblies in D.C. by Class members and/or purchases by D.C. residents.

      a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in the District of Columbia.

      b.     The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power

60

between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and members of the Damages Class had no power to negotiate a lower price. Moreover, members of the Damages Class lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of members of the Damages Class. Defendants took grossly unfair advantage of members of the Damages Class. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

c.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD

suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

121.    **Florida.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Fla. Stat. §§ 501.201,** *et seq.*, with respect to purchases of HDD suspension assemblies in Florida by Class members and/or purchases by Florida residents.

a.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the

62

Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured and are threatened with further injury.

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, members of the Damages Class seek all relief available under that statute.

122.    **Hawaii.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Haw. Rev. Stat. §§ 480,** *et seq.* with respect to purchases of HDD suspension assemblies in Hawaii by Class members and/or purchases by Hawaii residents.

a.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the

Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured and are threatened with further injury.

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §§ 480, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

123.    **Illinois.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **815 ILCS §§ 505/1,** *et seq*. with respect to purchases of HDD suspension assemblies in Illinois by Class members and/or purchases by Illinois residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Illinois; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Illinois commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS §§ 505/1, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

124.    **Kansas.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Kan. Stat. §§ 50-623,** *et seq.*, with respect to purchases of HDD suspension assemblies in Kansas by Class members and/or purchases by Kansas residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Kansas commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. §§ 50-623, *et seq.* and, accordingly, members of the Damages Class seek all relief available under that statute.

125.    **Maine.** have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **5 Me. Rev. Stat. §§ 207,** *et seq*. with respect to purchases of HDD suspension assemblies in Maine by Class members and/or purchases by Maine residents.

a.      Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Maine; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b. During the Class Period, Defendants' illegal conduct had a substantial effect on Maine commerce.

c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. §§ 207, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

126. **Massachusetts.** have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mass. Gen. Laws, ch. 93A, § 2** with respect to purchases of HDD suspension assemblies in Massachusetts by Class members and/or purchases by Massachusetts residents.

a. Defendants were engaged in trade or commerce as defined by Mass. Gen. Laws ch. 93A.

b. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which HDD suspension assemblies

were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from members of the Damages Class.

c.  Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class were injured and are threatened with further injury.

e.  Defendants have or will be served with a demand letter in accordance with Mass. Gen. Laws ch. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

f.  By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' violations of Chapter 93A were

knowing or willful, entitling members of the Damages Class to multiple damages.

127. **Michigan.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mich. Stat. §§ 445.901,** *et seq.* with respect to purchases of HDD suspension assemblies in Michigan by Class members and/or purchases by Michigan residents.

    a. Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on Michigan commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. §§ 445.901, *et*

*seq.*,. and, accordingly, members of the Damages Class seek all relief available under that statute.

128.    **Minnesota.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Minn. Stat. §§ 325F.68,** *et seq.*, and **Minn. Stat. §§ 8.31,** *et seq.* with respect to purchases of HDD suspension assemblies in Minnesota by Class members and/or purchases by Minnesota residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Minnesota commerce.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325F.68, *et seq.*, and Minn. Stat. §§ 8.31, *et seq.* and, accordingly, members of the Damages Class seek all relief available under that statute.

129.   **Missouri.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mo. Rev. Stat. §§ 407.010, *et seq.*,** with respect to purchases of HDD suspension assemblies in Missouri by Class members and/or purchases by Missouri residents.

      a.    Plaintiffs and the Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

      b.    Defendants engaged in the conduct described herein in connection with the sale of HDD suspension assembly in trade or commerce in a market that includes Missouri.

      c.    Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to members of the Damages Class.

      d.    Defendants concealed, suppressed, and omitted to disclose material facts to members of the Damages Class concerning Defendants'

unlawful activities and artificially inflated prices for HDD suspension assemblies. The concealed, suppressed, and omitted facts would have been important to members of the Damages Class as they related to the cost of HDD suspension assemblies they purchased.

e.  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD suspension assembly by making public statements that were not in accord with the facts.

f.  Defendants' statements and conduct concerning the price of HDD suspension assemblies were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing HDD suspension assemblies at prices established by a free and fair market.

g.  Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Missouri; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

h.    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

i.    As a direct and proximate result of the above-described unlawful practices, members of the Damages Class suffered ascertainable loss of money or property.

j.    Accordingly, members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

130.    **Montana.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Mont. Code §§ 30-14-101, *et seq.*** with respect to purchases of HDD suspension assemblies in Montana by Class members and/or purchases by Montana residents.

a.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed,

and eliminated throughout Montana; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured and are threatened with further injury.

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq*., and, accordingly, members of the Damages Class seek all relief available under that statute.

131.    **Nebraska.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Neb. Rev. Stat. §§ 59-1601,** *et seq*, with respect to purchases of HDD suspension assemblies in Nebraska by Class members and/or purchases by Nebraska residents.

a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD

74

suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.  During the Class Period, Defendants' illegal conduct had a substantial effect on Nebraska commerce.

c.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601, *et seq.* and, accordingly, members of the Damages Class seek all relief available under that statute.

132.  **Nevada.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Nev. Rev. Stat. §§ 598.0903,** *et seq.* with respect to purchases of HDD suspension assemblies in Nevada by Class members and/or purchases by Nevada residents.

a.  Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD suspension

75

assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Nevada commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. §§ 598.0903, *et seq.* and, accordingly, members of the Damages Class seek all relief available under that statute.

133.    **New Hampshire.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.H. Rev. Stat. §§ 358-A:1,** *et seq.* with respect to purchases of HDD suspension assemblies in New Hampshire by Class members and/or purchases by New Hampshire residents.

a.      Defendants willingly and knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold,

distributed or obtained in New Hampshire and took efforts to conceal their agreements from members of the Damages Class.

b.    The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.H. Rev. Stat. §§ 358-A:1, *et seq*., in that such conduct, *inter alia*, resulted in a gross disparity between the value received by members of the Damages Class and the prices paid by them for HDD suspension assemblies as set forth in N.H. Rev. Stat. §§ 358-A:1, *et seq*. Members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and members of the Damages Class had no power to negotiate a lower price. Moreover, members of the Damages Class lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and

overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of members of the Damages Class. Defendants took grossly unfair advantage of members of the Damages Class. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

c.     Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

e.     As a direct and proximate result of the unlawful conduct of Defendants, members of the Damages Class have been injured and are threatened with further injury.

f.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. §§ 358-A:1, *et seq*., and, accordingly, members of the Damages Class seek all relief available under that statute.

134.    **New Mexico.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.M. Stat. Ann. §§ 57-12-1,** *et seq.* with respect to purchases of HDD suspension assemblies in New Mexico by Class members and/or purchases by New Mexico residents.

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from members of the Damages Class.

b.      The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by members of the Damages Class and the prices paid by them for HDD suspension assemblies as set forth in N.M.S.A., § 57-12-2E. Members of the Damages Class were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.

There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD suspension assemblies. Defendants had the sole power to set that price and members of the Damages Class had no power to negotiate a lower price. Moreover, members of the Damages Class lacked any meaningful choice in purchasing HDD suspension assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of HDD suspension assemblies, including their illegal conspiracy to secretly fix the price of HDD suspension assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of members of the Damages Class. Defendants took grossly unfair advantage of members of the Damages Class. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD suspension assemblies.

c.      Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed,

80

and eliminated throughout New Mexico; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.    As a direct and proximate result of the unlawful conduct of Defendants, members of the Damages Class have been injured and are threatened with further injury.

f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. Ann. § 57-12-1, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

135.    **New York.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.Y. Gen. Bus. L. §§ 349, *et seq.*** with respect to purchases of HDD suspension assemblies in New York by Class members and/or purchases by New York residents.

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD

81

suspension assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from members of the Damages Class.

b.     Defendants made public statements about the prices of HDD suspension assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for HDD suspension assemblies; and Defendants alone possessed material information that was relevant to consumers but failed to provide the information.

c.     Because of Defendants' unlawful trade practices in the State of New York, New York consumer Class members who indirectly purchased HDD suspension assemblies were misled to believe that they were paying a fair price for HDD suspension assemblies or the price increases for HDD suspension assemblies were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

d.     Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

e.  Defendants knew that their unlawful trade practices with respect to pricing HDD suspension assemblies would have a broad impact, causing consumer Class members who indirectly purchased HDD suspension assemblies to be injured by paying more for HDD suspension assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

f.  The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

g.  Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

      h.     During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

      i.     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in New York.

      j.     Members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

136.   **North Carolina.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **N.C. Gen. Stat. §§ 75-1.1,** *et seq.* with respect to purchases of HDD suspension assemblies in North Carolina by Class members and/or purchases by North Carolina residents.

      a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from members of the Damages Class.

      b.     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and

maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which members of the Damages Class could not possibly have been aware.

c.    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

e.    During the Class Period, Defendants' marketed, sold, or distributed HDD suspension assemblies in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

f.   During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD suspension assemblies in North Carolina.

g.   Members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

137.   **Oregon.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Or. Rev. Stat. §§ 646.605,** *et seq.* with respect to purchases of HDD suspension assemblies in Oregon by Class members and/or purchases by Oregon residents.

a.   Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Damages Class were deprived of free and open competition; and (4)

members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. §§ 646.605, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

138.    **Rhode Island.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **R.I. Gen. Laws §§ 6-13.1-1, *et seq.*** with respect to purchases of HDD suspension assemblies in Rhode Island by Class members and/or purchases by Rhode Island residents.

a.      Members of this Damages Class purchased HDD suspension assemblies for personal, family, or household purposes.

b.      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Rhode Island.

87

c.    Defendants deliberately failed to disclose material facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' HDD suspension assembly prices were competitive and fair.

d.    Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

e.    As a direct and proximate result of the Defendants' violations of law, members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth

above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

139.   **South Carolina.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **S.C. Code §§ 39-5-10, et seq.** with respect to purchases of HDD suspension assemblies in South Carolina by Class members and/or purchases by South Carolina residents.

a.     Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

     c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

     d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code §§ 39-5-10, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

140.    **South Dakota.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **S.D. Codified Laws § 37-24-6** with respect to purchases of HDD suspension assemblies in South Dakota by Class members and/or purchases by South Dakota residents.

     a.      Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

     b.      During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

    c.    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-6, and, accordingly, members of the Damages Class seek all relief available under that statute.

141.    **Tennessee.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Tenn. Code §§ 47-18-101, *et seq.*** with respect to purchases of HDD suspension assemblies in Tennessee by Class members and/or purchases by Tennessee residents.

    a.    Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code §§ 47-18-101, *et seq*, and, accordingly, members of the Damages Class seek all relief available under that statute.

142.    **Utah.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Utah Code §§ 13-11-1, *et seq.*** with respect to purchases of HDD suspension assemblies in Utah by Class members and/or purchases by Utah residents.

a.     Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

b.     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

    c.     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §§ 13-11-1, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

143. **Virginia.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Va. Code §§ 59.1-196,** *et seq.* with respect to purchases of HDD suspension assemblies in Virginia by Class members and/or purchases by Virginia residents.

    a.     Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Virginia; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b.     During the Class Period, Defendants' illegal conduct had a substantial effect on Virginia commerce.

    c.      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d.      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code §§ 59.1-196, *et seq*, and, accordingly, members of the Damages Class seek all relief available under that statute.

144.  **Vermont.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **Vt. Stat. 9 §§ 2451, *et seq.*** with respect to purchases of HDD suspension assemblies in Vermont by Class members and/or purchases by Vermont residents.

    a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD suspension assemblies were sold, distributed, or obtained in Vermont.

    b.      Defendants deliberately failed to disclose material facts to members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD suspension assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence.

Defendants misrepresented to all purchasers during the Class Period that their HDD suspension assembly prices were competitive and fair.

c.   Defendants' unlawful conduct had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

d.   As a direct and proximate result of Defendants' violations of law, members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

e.   Defendants' deception, including their omissions concerning the price of HDD suspension assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD suspension assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable

activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, members of the Damages Class seek all relief available under that statute.

145. **West Virginia.** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of **W. Va. Code §§ 46A-6-101,** *et seq.* with respect to purchases of HDD suspension assemblies in West Virginia by Class members and/or purchases by West Virginia residents.

    a. Defendants' combination or conspiracy had the following effects: (1) HDD suspension assembly price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD suspension assembly prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for HDD suspension assemblies.

    b. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

    c. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

96

d.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code §§ 46A-6-101, *et seq.* and, accordingly, members of the Damages Class seek all relief available under that statute.

146.    Plaintiffs and members of the Damages Class have been injured in their business and property by reason of Defendants' anticompetitive, unfair, unconscionable, and/or deceptive conduct. Their injury consists of paying higher prices for HDD suspension assemblies than they would have paid in the absence of these violations. This injury is of the type the state consumer protection statutes were designed to prevent and directly results from Defendants' unlawful conduct.

147.    On behalf of themselves and the Damages Class, Plaintiffs seek all appropriate relief provided for under the foregoing statutes.

### FOURTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Damages Class)**

148.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

149.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD suspension assemblies.

150.    Defendants have benefited from their unlawful acts and it would be inequitable, under unjust enrichment principles under the laws of each state in the United

States as well as the District of Columbia, except for Delaware, Georgia, Indiana, Kentucky, Louisiana, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, Washington, and Wyoming for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs  or the members of the Damages Class for HDD suspension assemblies.

151.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

152.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits from Defendants' sales of HDD suspension assemblies.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully request judgment against Defendants as follows:

1.    That the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

2.     That the unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed:

   a.     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

   b.     A *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

   c.     An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

   d.     Acts of unjust enrichment by Defendants as set forth herein.

3.     That Plaintiffs and the Damages Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be multiplied or trebled to the extent such laws permit;

4.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

5.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or

claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits identification of company's information;

6.    Plaintiffs and the members of the Damages Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of the Complaint;

7.    Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

8.    Plaintiffs and the members of the Classes have such other and further relief as the case may require and as the Court deems just and proper.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all issues so triable.

Dated:  September 9, 2019                              Respectfully submitted,

By:/s/ Richard M. Hagstrom
Richard M. Hagstrom (#39455)
Nicholas S. Kuhlmann (#33750X)
**HELLMUTH & JOHNSON**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Facsimile: (952) 941-2337
rhagstrom@hjlawfirm.com
nkuhlmann@hjlawfirm.com

*Attorneys for Plaintiffs and the Proposed Classes*